## In re WILSON.
### Patent Appeal No. 3295.

Court of Customs and Patent Appeals.
April 16, 1934.

Rector, Hibben, Davis & Macauley, of Chicago, Ill. (Glen E. Smith, of Chicago, Ill., and Charles M. Thomas and Francis D. Thomas, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of 'Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There are here involved thirteen claims (Nos. 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16) of an application for patent for alleged "improvements in re-enforced pavement and method of laying same."

The appeal is from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner, denying patentability in view of the prior art.

One claim (No. 17) stands allowed, and is not here involved.

There are three classes of claims, the first class being for the method, the second class for a re-enforcement for pavements, and the third for the pavement complete.

As illustrative of these respective classes we quote claims Nos. 2, 14, and 16.

"2. The method of laying a pavement which consists in forming a paving base, unrolling on said base a flexible metallic mat comprising spaced metal strips resting edgewise on said base, and then filling the spaces of said mat with plastic paving material to the level of the upper edges of said metal strips and leaving the top surfaces of said strips exposed.

"14. A re-enforcement for pavements comprising a plurality of metal units extending parallel to each other, said units having aligning holes therein, and removable rods engaging said holes and pivotally connecting said units.

"16. A pavement comprising a base, a flexible metallic re-enforcing mat mounted on said base and composed of a plurality of metallic strips resting edgewise on said base, and surface paving material having said metallic mat embedded therein and having the uppermost edges of said mat exposed through said surface pavement."

The references cited are: McPherson, 912,600, February 16, 1909; Benedict, 1,-388,544, August 23, 1921; Koehring 1,424,-169, August 1, 1922; Dunker (British), 257,-057, August 26, 1926.

The particular article upon which the claims of the second class are based, as shown in the drawings and described in the specification, is a matting composed of a plurality of sheet metal strips (each strip in the commercial product exhibited to the court being about ⅝ of an inch wide) set

edgewise and placed in zigzag formation so as to form somewhat rectangular spaces or units approximately (in the commercial product exhibited) 1½ by 1¼ inches in dimension. Each unit intermeshes with its adjacent units, and the units are pivotally connected by rods or pins running through holes prepared therefor, such rods being removable.

By reason of the units being pivotally connected with removable rods, that is rods unattached at their ends, the matting is flexible to an extent which renders it susceptible of being formed into rolls of such diameter as may be desired, very much in the style of rolls of ordinary farm fencing wire. The particular flexibility inherent in the arrangement also renders the matting easy of being unrolled for the uses for which designed.

It is noted that each claim of the second class calls, in substance, for means for forming pivotal connection of the units. Of these only claim No. 10 defines the flexibility of the matting by using the word "flexible," and only claims Nos. 14 and 15 have the limitation that the rods forming the pivotal connection are removable.

Claim No. 16, which is for the finished pavement, uses the word "flexible," but says nothing of pivotal connections for the units, nor of the removability of the pins.

It is stated in the brief for appellant that his matting is intended primarily for forming the floors or platforms of shops, railway stations, and the like, where heavy trucks pass repeatedly over the same parts of the floors, or platforms, and quickly wear off the surface when the pavement is constructed in the usual manner.

In the practice of appellant's method the pavement is constructed by first laying a base, for example, of concrete. The matting is then unrolled upon this base. Should a roll contain more matting than is required to cover the length of space desired, the pivot pins, or rods, are pulled out at the proper point and the matting thus separated. When it is desired to attach two lengths of matting together, the pivot rods are inserted. After the base has been covered with the matting, and the matting is adjusted, the spaces in the somewhat rectangular units are filled with asphalt, or the like, the asphalt being made flush with the upper edges of the strips so that such edges are exposed to view, with the floor thus formed substantially smooth.

The patent to McPherson, upon which all the article claims, except No. 16, supra, were rejected, is for a metallic mat formed of strips arranged in a manner not unlike that of appellant. The units are intermeshed and are secured together by pivot rods, but the ends of these rods are bent transversely and the extremities of the strips are reversely bent over the ends of the rods, so that the rods are not removable and the units composing the mat are permanently united in such manner as that the mat cannot be rolled up. The McPherson mat seems to be of the door mat type, intended for use on doorsteps to permit the scraping of mud off the shoes of users, and the specification explains that the arrangement whereby the extremities of the strips are bent over the bent ends of the rods is for strengthening the margins of the mat and reducing the liability of the mat becoming distorted. To secure the body of the mat above the floor or surface upon which it is placed, pad blocks, thicker than the mat, are utilized. At one end the block engages with the pivot rod and at the other end it is held in place by a "holding pin" passing through the block and engaging with side arms of the strip.

Claim No. 16, supra, the only claim of its class—that is for the complete pavement—was rejected on the patent to Dunker, which is a British patent, relating to the construction of roads and the like, "more particularly," according to its specification, "to the surface covering or 'carpeting' of concrete and like foundations." It discloses the use of a mat of strip metal pieces set edgewise and zigzagged, being so arranged as to form rectangular spaces. The strips are held together by pins inserted diagonally and permanently at the corners of the spaces which results in the mat being rigid rather than flexible—that is, it cannot be rolled up like the mat of appellant. The mat is placed upon the foundation and filled with asphalt, cement, or the like, flush with the upper edges of the strips. This patent clearly teaches that the mat, like the mat of appellant, is for use, not in the foundation of the road, but in the surfacing substances as above described.

The method claims were all rejected upon the British patent in view of either Benedict or Koehring. The patent to Benedict relates to re-enforcing fabric for concrete roads, such fabric consisting of rolls of wire, formed and arranged as described in the specification. The rolls may be unrolled and cut to any desired lengths. The patent to Koehring relates to a machine for laying re-enforcing fabrics, such as wire, in the mak-

ing of concrete roads. The re-enforcing fabric described in these patents is not flexible in the sense in which appellant's matting is flexible—that is, its units are not pivotally connected.

It seems apparent to us that the McPherson patent constitutes an anticipation of all of appellant's claims, as same are drawn, except the two, Nos. 14 and 15, which contain the limitation of removable rods. It is true that McPherson's device is intended for a use different from the device of appellant, but the claims constitute the measure of the invention. McPherson shows pivotal connections and his device is flexible to a certain degree. Appellant in claim No. 10 defines the flexibility of his mat merely by using the word "flexible" without any limitation which prescribes the degree of flexibility. . Nothing is said therein to indicate a degree of flexibility which will admit of the matting being rolled, nor does any other of the six claims of the second class, in terms, describe the matting as being rollable. Claims Nos. 14 and 15, however, do call for removable pins and this is a limitation not found in McPherson, or in any other reference cited. We think these two claims should be allowed.

We are unable to concur in appellant's contentions as to the method claims. All that substantially distinguishes them from the process which must be followed in the British patent is the "unrolling" of the mats. Since they are made to be unrolled, and cannot practicably be used without unrolling, we are unable to ascribe patentability to a method which distinguishes from the prior art only in this respect. It may be added that the wire used by Benedict and Koehring is unrolled as it is placed. True, the wire must be cut to the lengths desired, while appellant's matting may be severed by pulling out the removable pins, but these are made to be pulled out when necessary, and do not, in our opinion, lend patentability to the method as defined in the claims.

Also we are of the opinion that claim No. 16 was properly rejected. We are unable to discern any patentable distinction between the finished pavement of Dunker, as described in the Dunker patent, and that of appellant.

The decision of the Board of Appeals is modified, being reversed as to claims Nos. 14 and 15, and affirmed as to all others.